UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NUMBERS:
8:21-cr-157-WFJ;
8:18-cr-31 WFJ

**UNITED STATES OF AMERICA,**

*vs.*

**FERNANDO PINEDA-JIMENEZ,**

  *Defendant.*
  _____/

DEFENDANT'S SENTENCING MEMORANDUM

The defendant, **FERNANDO PINEDA JIMENEZ,** ("the defendant", or "Fernando" herein), by and through his undersigned counsel, respectfully requests this Court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a), and files this Sentencing Memorandum and states as follows:

I.

**PREFACE**

After years of mandatory sentencing guidelines, the Supreme Court restored the traditional power of federal district court judges to impose individualized sentences that are not greater than necessary to satisfy the statutory purposes of sentencing. A federal district court can now consider all of the characteristics of the offender, circumstances of the offense and reject advisory guidelines.

1

We urge your Honor to fashion a sentence no greater than necessary to meet the purposes of sentencing. We believe that such a sentence would be the time already served in custody since his arrest in Suriname on May 16, 2017, over 99 months ago.

In general, the factors that militate in favor of such a sentence include: 1) the substantial assistance that the defendant provided to the Government; 2) that the Probation Department's guideline calculations are unfairly applied to the defendant in this case; 3) that the time spent in jail in Suriname prior to his incarceration in Tampa ought to be considered and 4) that the 18 USC Section 3553 (a) factors support a substantial variance in the case.

All of these factors are discussed below. This submission assumes that the reader has a familiarity with the facts as outlined in the Presentence Investigation Report ("PSR" herein) and prior pleadings in the case.

## II.

### THE DEFENDANT MERITS SENTENCING LENIENCY AS A CONSEQUENCE OF HIS SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT

The defendant has been incredibly honest from the get-go and has substantially assisted the Government in its investigation and prosecution of other people, including by testifying publicly in open court. He richly deserves a motion under U.S.S.G § 5K1.1.The details of this cooperation will be discussed further by the Government and by me at the sentence hearing but below is a non-exhaustive list of the types and quality of assistance he has provided.

One point to note here is that the sentencing involves two separate cases, what I call for convenience the Miami and the Tampa cases, or the 2011 and 2018 cases, based upon the location where the indictment was returned and the year it was voted. Other than where noted, most of the

discussion below about the facts and the Guidelines concerns the Tampa case. But the two cases were combined under Federal Rule of Criminal Procedure Rule 20.

I first met the defendant by telephone while he was incarcerated in Suriname prior to his expulsion from that country.[1] In my first conversation with him Fernando admitted his guilt and expressed a desire to cooperate. Prior to arriving in this District, I alerted the Government to his intention to cooperate. I believe this was significant because he began the debriefing process right after he arrived in this country and up to that point no other defendant in the indictment, to my knowledge, had cooperated.

Therefore, his cooperation was certainly timely. It was also highly significant and productive. How so?

First, and most dangerously for him, the defendant testified at a jury trial in open court against his co-conspirator in **United States v. Juan Gabriel Rios-Silva**. MDFL Indictment Number 21 CR 286 (JSM). This is perhaps the highest level of cooperation, exposing Fernando to a lifetime of danger after he is deported back to his community in Colombia where it is widely known that he was one of the trial witnesses.

Second, the defendant was prepared to testify and was brought to court to testify against Carlos Restrepo-Osorio at that man's sentence hearing (**United States v. Carlos Restrepo-Osorio**, 23 CR 188 [MSS]); Restrepo-Osorio was a defendant charged in another case about whom Fernando had knowledge. Attached as Exhibit A is a copy of the Government's publicly filed witness list in that case which also exposes him to possible danger in the future. For reasons

---

[1] The defendant was charged in Suriname for a crime related to the Tampa case. The details of how the cases are related are discussed in this Memorandum starting at page 8. The defendant was not extradited but rather was beaten by guards in the prison in Suriname until he signed a form written in Dutch that we assume was his "consent" to be expelled from Suriname and brought to the United States. The United States is not responsible for these awful events.

unknown to us, he was not called to testify at the Restrepo-Osorio sentence hearing, even though Fernando was ready and willing to do so. The Restrepo-Osorio case is significant in several ways discussed at greater length below.

Third, because he was debriefed first in the case, Fernando helped the government to understand and further investigate the outlines of who played what role in the Tampa conspiracy and in many other related conspiracies.

Fourth, the defendant provided detailed information about co-conspirators charged separately who were above Fernando in the hierarchy. What does that mean? Fernando, while a leader and organizer of the conspiracy charged in the indictment, which basically involved making semi-submersible for loads of cocaine, and helping to send those drugs, he was not part of the true leadership which consists of the owners of the drugs that were trafficked.

These men included his direct "boss" Nestor Hugo Gomez-Garcia, who eventually pleaded guilty and also is now attempting to cooperate. **United States v. Nestor Hugo Gomez-Garcia**, MDFL Indictment Number 19 CR 310 (MSS). Gomez-Garcia was extradited from Colombia after the defendant was sent to the United States and was debriefed, and were there to have been a trial of Gomez-Garcia, Fernando would have been a key witness. Fernando also provided evidence against drug owner Juan Carlos Garcia, Nestor Hugo Gomez-Garcia's uncle who was also prosecuted, but in New York I believe.

Other such men included "Oliver Sinisterra" and "Don Y", both high-ranking members of the anti-government guerilla group FARC. These men, unlike Fernando, militarily controlled the area where Fernando worked, and they profited far more than my client. Similarly, Mr. Restrepo-Osorio (discussed above), brothers Enrique and Edmundo Gongora and Oscar Quintero-Rengifo

4

all were charged separately but owned drugs and hired Fernando and other men in this indictment in other conspiracies.

In addition, the defendant's brother and co-defendant Rodrigo Pineda-Jiminez was headed straight to trial and denying his guilt in this case. Fernando did not want to see his brother lose a trial and receive an incredibly lengthy sentence. So I approached the Government and I was permitted to speak to Rodrigo's lawyer and Fernando was permitted to send his brother a message encouraging him to plead guilty and explaining that Fernando would be a witness against his own brother if necessary. But all was well; these efforts succeeded and Rodrigo pleaded guilty.

For all the foregoing reasons, and others to be discussed at the sentence hearing, he deserves a substantial reduction in the sentence that he would otherwise receive as a result of this cooperation.

### III.

**A REQUEST FOR A DEPARTURE OR VARIANCE FROM THE ADVISORY SENTENCING GUIDELINE COMPUTATION BASED UPON THE FACT THAT THE GUIDELINES OVERSTATE THE DEFENDANT'S CULPABILITY AND ARE IMPROPERLY DISPROPORTIONATE TO HIS CODEFENDANTS' GUIDELINES**

Paragraphs 117, 118, and 120 of the PSR (pages 26 and 27) contain upward adjustments for possession of a firearm, USSG Section 2D1.1(b)(1), use of a semi-submersible vessel, USSG Section 2D1.1(b)(3), and because the defendant organized or supervised a conspiracy with more than 5 people in it. USSG Section 3B1.1(a).

We do *not* lodge an objection to this recommended upward role adjustment as it does fit within the Guidelines as found by the 11th Circuit Court of Appeals. *See e.g.* **United States v. Caraballo**, 595 F.3d 1214, 1232 (11th Cir. 2010). This is because the defendant did recruit a person to the conspiracy and did provide instructions to some co-conspirators who took boats laden with drugs on the high seas.

5

But the defendant's role, it must be clear, was to provide and manage construction and security at the construction site for submersibles. He was not an owner/investor in any drug loads and therefore was an employee of separately charged real drug "bosses". On some occasions Fernando was paid in drugs and not cash but he did not own the drug loads, never had any customers, never negotiated prices with customers, nor even knew them, and did not have the necessary money nor organizational structure to have his own organization. The "real" leaders of the conspiracies included men such as Nestor Hugo Gomez-Garcia, mentioned above. These men are charged separately and they hired Fernando and gave him direction and payment, just as a homeowner might pay a contractor who in turn hires subcontractors to do additional work under his direction.

Still, the defendant's plea agreement stipulates that a managerial role adjustment is appropriate and we do not question that decision or agreement. However, the PSR also attributes two other adjustments, one for a firearm and one for the use of a submarine to transport drugs. While not contemplated in the agreement, these adjustments might be appropriate were they to be fairly applied to all defendants in the case or in related or similar cases. That they are not fairly applied is our basis for this objection.

Both the United States Constitution (5th and 14th Amendments) and federal statutes (18 U.S.C. § 3553[a]), require my client's equal protection and treatment under the law. Were my client to arbitrarily receive guidelines adjustments that were not applied to his codefendants (but should have been) that would violate the most basic of American legal concepts – the equal and fair treatment under the law.

My client's brother and codefendant, Rodrigo Pineda-Torres has been sentenced. And while I do not have access to his probation report it appears from his lawyer's sentence submission

that he received neither a gun nor a submarine adjustment (docket entry 184, at page 11, under 18 Cr. 31). Similarly, I have no access to the other defendants' reports but I have reason to believe based upon publicly filed documents that they too received neither adjustment, and certainly not the firearms adjustment.

The PSR is clear that my client did not personally possess a firearm but that he was aware or should have reasonably foreseen that others did. The case involves the creation of sea vessels to carry large amounts of cocaine. It was not only foreseeable but integral to the conspiracy that *ALL* defendants would know that submarines were being used to transport cocaine. If they did not know this then they would be innocent.

All defendants in this case knew that the people guarding the drugs and transporting them had weapons. Any defendant who denied that would be lying and ought to have been denied acceptance of responsibility points and safety valve treatment or a 5K motion.

Indeed, it is observable, not just foreseeable, to anyone in Colombia in the drug business working to load thousands of kilograms of cocaine in a dangerous jungle area controlled by violent rebel groups that someone else in the conspiracy has a firearm. This is baked into the case, or should be. The men guarding drugs at a drug location always have guns. No one should be safety valve eligible in a case such as this. But perhaps in order to mitigate the harsh effects of the correctly applied sentence guidelines some defendants are spared the guidelines true effects. This is not fair to my client. He should not be punished more harshly than others in the same conspiracy who equally well knew that someone else in the conspiracy possessed a firearm. To find otherwise would be to abuse common sense and legal principles. My client was likely the most honest defendant in these cases who provided the most substantial assistance. He ought not be punished

because he was more honest than other defendants who minimized or lied about their conduct and knowledge.

Another case in point is the previously mentioned Restrepo-Osorio case. A look at the government sentence memorandum in that case (Exhibit B) makes clear that he was the "boss" even more than was Fernando in this case inasmuch as he had an ownership interest in the drugs in that case. And yet he received no firearms adjustment, nor one for bribing a government official, nor an adjustment for using a non-regularly scheduled aircraft flight under, USSG § 2D1.1(b)(3), despite the facts that that these appear to all apply.

Therefore, we ask your Honor to factor into Fernando's sentence this disparate treatment of his culpability in that A) he received upward adjustments that other defendants ought to have received and B) his 4-level leadership adjustment overstates his culpability inasmuch as he was not the real "boss" of any conspiracy.

### IV.

### A REQUEST FOR A DEPARTURE OR VARIANCE FROM THE ADVISORY SENTENCING GUIDELINE COMPUTATION BASED UPON THE FACT THAT PRIOR TO HIS EXPULSION FROM SURINAME HE SERVED TIME IN PRISON IN SURINAME FOR RELATED CONDUCT

At the outset, this case is really two cases combined from Miami and Tampa, thanks to a Federal Rule of Criminal Procedure, Rule 20 motion.

The Defendant was arrested on May 16, 2017 in Suriname.[2] He was charged with the same sort of conduct in Suriname as charged here in Tampa; namely, participating in making a semi-submersible submarine and sending it laden with cocaine. The Suriname crime and the Tampa

---

[2] Should your Honor not sentence the defendant to time served then we ask that the judgment include direction to the Bureau of Prisons to credit him for all time spent in custody in Suriname prior to his extradition.

crime occurred during the same overlapping time period. The drug owners in Suriname who hired Fernando included associates of Nestor Hugo Gomez-Garcia, separately charged but deeply involved in this Tampa conspiracy. Alonso Pineda-Torres is a friend of Nestor Hugo (charged in Tampa separately but also involved in drug trafficking with the defendant here and 8:17CR14 (RAL), and he too was involved in both the Suriname conspiracy and in the American charges against Fernando. All in all the conduct is identical the time period too, and there is some overlap of actors. This is related conduct withing the meaning of the Sentencing Guidelines.

The Supreme Court has highlighted the punishment mitigating provisions intended under the sentencing guidelines when a defendant is subject to successive prosecutions involving relevant conduct but the prosecution is not Fifth Amendment barred. Applicable to these facts is precedent that supports a variance, adjustment, or departure from the advisory guidelines. *See* **Witte v. United States**, 515 U.S. 389, 404–06 (1995) (citing § 5G1.3 as an "attempt[] to achieve some coordination of sentences imposed [where separate prosecutions occur based in part on the same relevant conduct] with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time.").

As a predicate to the factual argument that follows, the Defendant respectfully invites this Court to consider the language utilized by the Supreme Court in **Witte**, suggesting a departure or variance is necessary to reach fair and just incremental punishment: Because the concept of relevant conduct under the Guidelines is reciprocal, § 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence.

Applicable to this case is USSG § 5G1.3(b) ("[i]f … a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions

9

of subsections (a)(1), (a)(2),or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment") which serves as the guiding light for USSG §5K2.23 ("downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.").

As cited in **Witte** and followed by the Eleventh Circuit, our punishment statute, 18 USC § 3553(b), provides the basis for reasoned incremental punishment, which after taking into account the time served in Suriname, requires a variance or departure. **Witte** states, "As the Commission has explained, [u]nder 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " USSG § 5K2.0 (policy statement).

We ask the Court to consider **Witte** in adjusting the Defendant's sentence to the time he already served in Suriname and the U.S.

## V.

## ANALYSIS OF SECTION 18 U.S.C. SECTION 3553(A) SENTENCING FACTORS

Next, I turn to an analysis of the appropriate sentencing factors that must be considered in all cases. The Defendant respectfully invites consideration of the following analysis of some key relevant statutory sentencing factors.

### The offense.

With respect to the nature of the offense, the defendant recognizes that by his actions he committed serious crimes. The Defendant was engaged in assisting the importation of narcotics into the United States. Such conduct is harmful to society and deserves punishment. But the PSR creates an overly harsh guidelines picture when it attributes adjustments for a firearm and one for the use of a submarine to transport drugs.

My client's brother received a sentence of 135 and he did not cooperate and only pleaded guilty at the last minute thanks to my client and my work and while their roles differed, my clinet's was not so different that than of his brother Rodrigo. *See e.g.,* PSR at ¶ 106. The basic point is that the PSR makes my client the leader of the Tampa conspiracy when in common non-legal parlance, he was not the leader, but rather a contractor hired by the drug owners to do a managerial service. Similarly, in the Miami case my client was subservient to Mauner Maheca Marcelo, the "primary investor/financier" and "most culpable member of the conspiracy." *See* PSR at ¶ ¶ 36 and 61. Yet this man received a sentence of 85 months. *See* PSR at page 2.

### History and characteristics of the Defendant.

Fernando is 44 years old. When the Defendant was 33 years old his father passed away from a stroke. Fernando did have a good relationship with his father up until the time of his passing

and to this day he is very close to his mother. His relationship with his father was a deeply meaningful one, and even in his father's final years—when he was wheelchair-bound and in chronic pain—they remained close. He emphasized that his home growing up was loving, free of abuse, and not marked by addiction or violence. And Fernando's mother is especially supportive of him during this difficult time in his life but her health is okay.

The defendant recounted his early years in the small, rural town of Mosquera, in Colombia's Department of Nariño. Although the area was impoverished, his own family was relatively stable thanks to his father's lumber mill business. He described his childhood as positive and supportive. He attended school and remembers that his needs were always met. However, that stability was shaken when his father suffered a debilitating stroke while the defendant was still in secondary school. From that point on, life changed dramatically. His father required constant medical care and physical therapy, and the family faced new challenges.

Despite the upheaval, the defendant graduated high school and immediately stepped into the role of caretaker and provider. As the eldest son, he felt it was his responsibility to support his family, and he did so without hesitation.

The defendant is married to Mabel Rosio Castillo (age 38). While they have been officially married for four and a half years, their relationship spans over two decades. Mabel suffers from thyroid problems and survived a terrifying incident in Ecuador, where she was shot multiple times during a robbery attempt. Someone tried to steal her gold necklace, and the attack left lasting physical and emotional scars. Together, they have three children: Carmen Fernanda (16), Donna Yalena (12), and Diego Fernando (7). Diego suffers from a hernia, but otherwise, the children are healthy. Mabel and the children currently live in Cali, Colombia. Before his arrest, the defendant was the sole provider for the household. In his absence, Mabel took on work in a beauty salon to

support the family but has since lost that job due to the impact of the COVID-19 pandemic. Now she is working as a masseuse. She is barely holding things together for her family.

I ask that the Court review Exhibit C, the moving letters of Fernando's mother and wife that give much needed color to the PSR and a sense of who he is as a person.

**The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; the need for deterrence.**

The offense is a serious one. Drugs are harmful to society. Any person who transgresses society's law by engaging in the drug trade, must face the consequence of his or her actions. But a sentence disproportionate to the seriousness of the offense does not promote respect for the law. The prescribed pre-departure guideline sentence for the offense does not take into consideration factors previously argued, such as the defendant's substantial assistance, the degree to which the guidelines overstate his culpability and his and his children's health issues.

To promote respect for the law, the punishment in this case should be less than prescribed by the sentencing guidelines. In that vein, we ask your Honor to look at sentences received in the related cases (listed in the Report and in this Memorandum. Based upon that, Fernando should receive a sentence of time served.

**The need to avoid unwarranted sentence disparities among similarly situated defendants.**

An important case to use as a comparison to this one is that of Juan Carlos Restrepo-Osorio, who received just 33 months in jail even though his 5K "credits" appeared to be less than Fernando's (Ex. D). Similarly, in the Miami case the. Ultimate leader, Mr. Maheca, received only 85 months. And it appears from publicly available information that Fernando's cooperation as more impressive than that of either of these two men.

13

**The need to protect the public from further crimes of defendant.**

As noted above, the Defendant readily agreed to plead guilty and has provided substantial assistance to the Government. He expresses what seems to be a deep and sincere remorse for his criminal activities. It is highly unlikely that this man would engage in future criminal activity. Why?

All relevant factors point to a person capable of earning a livelihood through hard work. Because he cooperated publicly everyone he knows in the drug trafficking world knows that he could not be trusted again in the drug world so it would be nearly impossible for him to start again in any event. The public does not need to be protected from him. He is deterred from doing this crime again. He has certainly been punished. But other people may need to be deterred and so there needs to be punishment to achieve the goal of general deterrence. But society should also encourage cooperation with the authorities and so his sentence should be sufficiently short so that others will see the benefits of cooperation with the Government and choose that route when they are arrested.

This Defendant, therefore, should not be confined for such a lengthy period that it will totally destroy him and his family's future and possibly deter other people from cooperating.

## VI.

## CONCLUSION

The law requires district courts to impose the least severe sentence necessary to satisfy the purposes of sentencing. I ask that your Honor sentence the defendant to the time already served in custody. Mr. Pineda and his family appreciate the Court's consideration.

                                          Respectfully submitted,

                                          /S/ Alexei Schacht

                                          Alexei Schacht, Esq  
                                          Attorney for the Defendant  
                                          123 W 94th Street  
                                          New York, New York 10025  
                                          P: (646)729-8180  
                                          F: (212) 504-8341  
                                          alexei@schachtlaw.net

August 28, 2025

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 28th day of August, 2025 my law office electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/S/ Alexei Schacht

Alexei Schacht, Esq
Attorney for the Defendant
123 W 94th Street
New York, New York 10025
P: (646)729-8180
F: (212) 504-8341
alexei@schachtlaw.net